SEARA SULLIVAN (SBN 303403)
ssullivan@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, CA  94111-3600
Tel:  415-984-8200
Fax:  415-984-8300

JASON C. KRAVITZ (admitted *pro hac vice*)
jkravitz@nixonpeabody.com
GINA M. MCCREADIE (admitted *pro hac vice*)
gmccreadie@nixonpeabody.com
NIXON PEABODY LLP
Exchange Place
53 State Street
Boston, MA  02109-2835
Tel: 617-345-1000
Fax:  617-345-1300

Attorneys for Defendant
TOMOCREDIT INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GEAGLEY, individually and on behalf of all others similarly situated;<br><br>               Plaintiffs,<br><br>  vs.<br><br>TOMOCREDIT, INC.,<br><br>               Defendant. | Case No.: 3:26-CV-00435-RFL<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOMOCREDIT INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION PENDING ARBITRATION**<br><br>Hearing Date: July 14, 2026<br>Time: 10:00 a.m.<br>Courtroom 15<br>Judge: Hon. Rita F. Lin |

DEFENDANT'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY ACTION; Case No.: 3:26-CV-00435

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2026, at 10 a.m., in Courtroom 15 in San Francisco of the above-captioned action, defendant TomoCredit Inc. ("Tomo") will and does move for an order to: (1) compel arbitration of the claims filed by plaintiff William Geagley ("Geagley"); (2) stay this action pending arbitration; and (3) grant all such further relief that the Court deems just and appropriate.

As detailed more fully in the accompanying Memorandum of Points and Authorities, when Geagley signed up for and used Tomo's TomoBoost service, he expressly agreed to resolve all disputes by arbitration and waived all rights to participate in a class action. In fact, there was no way for Geagley to sign up for TomoBoost without *first* agreeing to the arbitration provision, which notably contains an opt out provision. Geagley chose not to opt out. Under the agreed-to arbitration provision, this Court is powerless to hear or resolve this dispute or determine the enforceability, revocability, scope, or validity of the arbitration provision, which powers are held exclusively by the arbitrator.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Declaration of Soyeon Kim submitted currently herewith, the pleadings and documents filed in this action, and such further evidence and argument that may be presented at the hearing of this Motion and that the Court may consider.

Dated: June 2, 2026                                   NIXON PEABODY LLP


By: */s/ Gina M. McCreadie*
Seara Sullivan
Jason C. Kravitz (admitted *pro hac vice*)
Gina M. McCreadie (admitted *pro hac vice*)
Attorneys for Defendant
TOMOCREDIT INC.

# **TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.   INTRODUCTION ........................................................................................................... 1

III.  STATEMENT OF THE FACTS...................................................................................... 2

    A.    TomoBoost Application Process........................................................................... 2

    B.    Tomo's Arbitration Provision is Fair, Reasonable, and Binding ........................... 4

IV.   ARGUMENT .................................................................................................................. 6

    A.    Legal Standard ..................................................................................................... 6

    B.    The Court Must Compel Arbitration..................................................................... 7

        1.    The FAA Governs the Arbitration Agreement............................................ 7

        2.    The T & Cs Constitute a Valid and Enforceable Agreement...................... 8

        3.    The T & Cs Clearly and Unmistakably Delegated Questions of
            Arbitrability to the Arbitrator................................................................... 11

    C.    This Action Must Be Stayed Pending the Arbitration ......................................... 12

V.    CONCLUSION .............................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdel-Latif v. Brookdale Emp. Servs., LLC*,
No. 23-CV-06372-BLF, 2024 WL 2112869 (N.D. Cal. May 9, 2024) .................................. 11

*Acosta v. Brave Quest Corp.*,
733 F. Supp. 3d 920 (C.D. Cal. 2024)..................................................................................... 12

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ................................................................................................................. 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................................. 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)........................................................................................... 8, 9, 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000).................................................................................................. 6

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ................................................................................................................... 7

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (9th Cir. 2014).................................................................................................. 8

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013).................................................................................................... 8

*Gountoumas v. Giaran*,
No. CV 18-7720-JFW, 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) .................................. 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ................................................................................................................. 11

*Kilgore v. KeyBank, Nat'l Ass'n.*,
673 F.3d 947 (9th Cir. 2012), *reversed and remanded on other grounds*, 718
F.3d 1052 (9th Cir. 2013)....................................................................................................... 13

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014)..................................................................................................... 7

*Martinez v. Leslie's Poolmart, Inc.*,
No. 8:14-cv-01481-CAS, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014) ................................. 7

*McDougall v. Samsung Elecs. Am., Inc.*,
No. 23 CIV. 168 (LGS), 2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023) ................................... 12

ii

*McGrath v. Doordash, Inc.*,
    No. 19-cv-05279-EMC, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ................................... 7

*Needleman v. Golden 1 Credit Union*,
    474 F. Supp. 3d 1097 (N.D. Cal. 2020) ................................................................... 7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013)................................................................................ 12

*Ramirez v. LQ Mgmt., L.L.C.*,
    No. 2:19-cv-06507-ODW(JPRx), 2020 WL 2797285 (C.D. Cal. May 29, 2020) .................... 7

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ............................................................................................ 13

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)..................................................................................... 10

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
    No. EDCV161953DMGKKX, 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020) ...................... 10

*Ziober v. BLB Res., Inc.*,
    839 F.3d 814 (9th Cir. 2016)..................................................................................... 8

**State Cases**

*B.D. v. Blizzard Entm't, Inc.*,
    76 Cal. App. 5th 931 (2022)...................................................................................... 9

*Wu v. Uber Techs., Inc.*,
    260 N.E.3d 1060 (N.Y. Ct. App. 2024) ........................................................... 8, 9, 10

**Federal Statutes**

Federal Arbitraiton Act, 9 U.S.C. § 1, *et seq.* .................................................... passim

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Complaint (ECF No. 1) and all claims asserted therein, including any challenges to the enforceability, revocability, scope, or validity of the arbitration provision at issue, must be resolved in arbitration; and

2.    Whether this action must be stayed in its entirety until such arbitration is completed.

**II.    INTRODUCTION**

When plaintiff William Geagley ("Geagley") signed up for and used defendant TomoCredit Inc.'s ("Tomo") TomoBoost services in October 2025, he was *required* to affirmatively check a box certifying that he had read all of Tomo's terms and conditions for using TomoBoost (the "T & Cs") *before* using such service. The T & Cs – which were accessible via an italicized, hyperlink immediately adjacent to the checkbox seeking his confirmation that he had read them (the "Certification Box") – clearly and conspicuously put Geagley on notice – in bold, capitalized letters on the first page – that the agreement contains a binding arbitration agreement and that all disputes relating to his use of TomoBoost would be resolved exclusively through arbitration, on an individual basis (with all rights to participate in a class action waived). Section 11 of the T & Cs, entitled "DISPUTE RESOLUTION AND ARBITRATION," clearly and conspicuously details – in plain language – the scope of the arbitration provision, advises Geagley to read the arbitration provision carefully, and expressly grants Geagley the ability to *opt out* of the arbitration provision, which Geagley chose not to do.[1] The arbitration provision further provides that the appointed arbitrator would have the exclusive authority to resolve any dispute between Geagley and Tomo, including all disputes relating to the interpretation or application of the arbitration provision, such as its enforceability, revocability, scope, and validity. As detailed more fully herein, by enforceable contractual agreement, this Court has no power to hear any of Geagley's claims and must compel

---

[1] The T & Cs also require that prior to commencing arbitration, Geagley would first contact Tomo and make a good-faith sustained effort to resolve any dispute informally, which includes providing a written notice of dispute to Tomo detailing, among other things, the facts of the dispute and the relief requested, and confirming that both parties agree to wait sixty (60) days after such notice is received before commencing arbitration. (Kim Decl., ¶ 15 and Ex. B, § 11.7.) Geagley disregarded all of these requirements.

1

DEFENDANT'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION AND TO STAY ACTION; Case No.: 3:26-CV-00435

him to submit those claims to arbitration. Tomo also requests that the Court stay this action pending completion of the arbitration.

## III.    STATEMENT OF THE FACTS

### A.    <u>TomoBoost Application Process</u>

Tomo is a fintech company that offers TomoBoost, Tomo's credit-building service. (Declaration of Soyeon Kim ("Kim Decl."), ¶ 4.) In October 2025, to subscribe to TomoBoost, a customer needed to complete a multi-step online application process, which included selecting one of three plans (Starter, VIP, or Premium) and choosing a monthly or yearly subscription. (*Id.* ¶ 5.) Once a plan and subscription term were selected, a customer was brought to a "Checkout" page where that customer was asked to provide their email, name and address, and credit card information. (*Id.* ¶ 6.)

Before the customer could submit their application by clicking the "Submit" button, they were *required* to check the Certification Box confirming that they had read the T & Cs. (*Id.* ¶ 7.) During this process, the T & Cs were clearly and conspicuously made available via an italicized "terms and conditions" hyperlink (which turned blue when the user hovered over this phrase) located immediately adjacent to, and on the same line as, the Certification Box that needed to be checked, thereby allowing the customer to review the T & Cs before deciding whether to accept them and submitting their application. (*Id.* ¶ 8.) The customer was free to review the T & Cs for as long as they needed before checking the Certification Box. (*Id.* ¶ 9.) Importantly, the customer could not click on the "Submit" button if the Certification Box was left unchecked. (*Id.* ¶ 10.) Below is a true and correct screenshot of the TomoBoost Checkout page accessed on March 16, 2026, with the cursor hovered over the italicized "terms and conditions" text, which is identical to how the TomoBoost Checkout page appeared in October 2025 (other than the price of a TomoBoost Premium plan on a monthly basis increased by $10 per month):

//

//

//

//

2



(*Id.* ¶ 11 and Ex. A.)

Consistent with Geagley's allegations in the Complaint (ECF No. 1, ¶¶ 45 and 46), Tomo's records indicate that Geagley signed up for the TomoBoost Premium plan on October 3, 2025. (Kim Decl., ¶ 12.) When Geagley signed up, he provided his name, email, address, credit card information, and checked the Certification Box to certify that he had read the T & Cs prior to submitting his application. (*Id.*) Tomo's records also indicate that Geagley updated his TomoBoost account to provide his telephone number, date of birth, and social security number, and that he accessed his account no fewer than eight (8) times between October 3, 2025 and October 27, 2025. (*Id.* ¶ 13.) Tomo's records further indicate that as of November 3, 2025, Geagley's account was past due, which is consistent with Geagley's allegation that he updated his account to change his payment method to an inactive payment card. (Kim Decl., ¶ 14; ECF No. 1, ¶ 57.) As Geagley

3

concedes, he paid for one month of TomoBoost before becoming the lead plaintiff in a class-action lawsuit. (ECF No. 1, ¶ 59; Kim Decl., ¶ 14.)

**B.**     **Tomo's Arbitration Provision is Fair, Reasonable, and Binding**

By clicking on the Certification Box confirming that he read the T & Cs, Geagley accepted the T & Cs and the binding arbitration provision contained therein.[2] Importantly, the first page of the T & Cs clearly and conspicuously notifies Geagley of the binding arbitration provision, including the class-action wavier set forth in Section 11 of the T & Cs in bold, capitalized letters as follows:

> **THIS AGREEMENT INCLUDES, AMONG OTHER THINGS, A BINDING ARBITRATION PROVISION GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"). BY ENTERING INTO THIS AGREEMENT AND USING ANY TOMOCREDIT SERVICES (INCLUDING BUT NOT LIMITED TO TOMOBOOST, TOMOCREDIT CARDS, OR ANY OTHER CURRENT OR FUTURE SERVICES OFFERED), YOU AND TOMOCREDIT EXPRESSLY AGREE THAT ANY AND ALL DISPUTES WILL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, ON AN INDIVIDUAL BASIS, AND NOT IN COURT. BY ACCEPTING THIS AGREEMENT, YOU AND TOMOCREDIT WAIVE THE RIGHT TO A JURY TRIAL AND TO PARTICIPATE IN A CLASS ACTION, CLASS ARBITRATION, OR ANY OTHER REPRESENTATIVE PROCEEDING. THIS ARBITRATION AGREEMENT APPLIES TO ALL CLAIMS OR DISPUTES, WHETHER ARISING BEFORE, DURING, OR AFTER YOUR RELATIONSHIP WITH TOMOCREDIT, AND SHALL SURVIVE TERMINATION OF THIS AGREEMENT. PLEASE REFER TO SECTION 11 BELOW FOR THE FULL ARBITRATION PROVISION, INCLUDING DETAILS ON THE CLASS ACTION WAIVER.**

(Kim Decl., ¶ 15 and Ex. B, p. 1 (bold and capitalization in original).)

Section 11 of the T & Cs, entitled "**DISPUTE RESOLUTION AND ARBITRATION**," contains the arbitration provision and class action waiver. Specifically, Section 11.1, entitled "**Arbitration**," advises Geagley to "[r]ead this provision carefully and understand that it limits your Rights in the Event of a Dispute Between You and Us. You Understand That You Have The Right To Reject This Provision As Provided In Sections below." (Kim Decl., ¶ 15 and Ex. B, § 11.1 (capitalization in original).) Section 11.3, entitled "**Binding Arbitration**," provides,

> You and [Tomo] agree that any and all disputes, claims, or controversies of any kind (collectively, a "Dispute") arising out of relating in any way to (i) your access to or use of . . . TomoBoost . . . (ii) the [Tomo] platform or website . . . [or] (iv) the

---

[2] Geagley also agreed, to the fullest extent permitted by law, that "any dispute resolution process will be conducted only on an individual basis and not in a class, consolidated or representative action. . .  As a result, PROCEEDINGS TO RESOLVE OR LITIGATE A DISPUTE IN ANY FORUM WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS." (Kim Decl., ¶ 15 and Ex. B, § 11.10 (capitalization in original).)

4

Terms of Use, Terms & Conditions or this Agreement . . . shall be resolved ***exclusively through binding arbitration*** administered in accordance with the Federal Arbitration Act ("FAA"), and not in a court of law.

(Kim Decl., ¶ 15 and Ex. B, § 11.3 (emphasis added).)

Section 11.3 also states that "This Arbitration Agreement shall survive termination of your relationship with [Tomo] and continue to govern any disputes thereafter." (*Id*.) Section 11.4, entitled "**No Judge or Jury**," further explains that "There is no judge or jury in arbitration, and court review of an arbitration award is limited." (*Id.* ¶ 15 and Ex. B, § 11.4.) Under Section 11.5, entitled "**Arbitrator and Rules**," provides that: (1) the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. governs the interpretation and enforcement of the Arbitration Agreement; (2) any arbitration will be administered by the American Arbitration Association ("AAA"), in accordance with the Consumer Arbitration Rules; and (3) the arbitration will be conducted before a single arbitrator "whose decision will be final and binding." (*Id.* ¶ 15 and Ex. B, § 11.5).

Importantly, the T & Cs contain an "**Opt-Out of Arbitration Provision**" at Section 11.13, which provides:

> You may opt out of this Arbitration Provision only by sending a written notice ("Opt-Out Notice") to [Tomo] by both email to help@TomoCredit.com and by physical mail to TomoCredit, Inc., Attn: Arbitration Opt-Out, PO BOX 194807, San Francisco, CA 94119, within thirty (30) days of the date of your electronic acceptance of this Agreement. The Opt-Out Notice must clearly state that you are rejecting arbitration, identify this Agreement by date, include your full legal name, current address, and the last four digits of your Social Security Number, and bear your handwritten signature. To be effective, [Tomo] must receive both the email and mailed copy within the thirty (30) day period. Any notice not meeting these requirements, including notices sent by only one method, received late, or submitted by an unauthorized third party, will be invalid, and you will remain bound by this Arbitration Provision.

(*Id.* ¶ 15 and Ex. B, § 11.13). Geagley does not allege in the Complaint that he sent Tomo an opt-out notice, and Tomo has no record of receiving any written notice from Geagley – by email or standard mail – attempting to opt out of the Arbitration Provision. (*Id.* ¶ 16).

Geagley did not waive any substantive rights by agreeing to arbitrate all disputes on an individual basis rather than bringing them in court. Indeed, Section 11.4 of the T & Cs expressly states that "an arbitrator can award on an individual basis the same damages and relief as a court

5

(including injunctive and declaratory relief or statutory damages), and must follow the terms of these [T & Cs] just as a court would." (*Id.* ¶ 15 and Ex. B, § 11.4.) Further, the T & Cs expressly provide that if Geagley initiates arbitration, his "arbitration fees will be limited to the filing fee set forth in the AAA's Consumer Arbitration Rules. Unless the arbitrator finds the arbitration was frivolous or brought for an improper purpose, [Tomo] will pay all other AAA and arbitrator's fees and expenses." (*Id.* ¶ 15 and Ex. B, § 11.9). That said, if Geagley or Tomo needs to invoke the authority of a court to compel arbitration – as Tomo is doing here – Section 11.17 expressly states that "the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration." (*Id.* ¶ 15 and Ex. B, § 11.17.) Given the clear enforceability of the mandatory arbitration clause at issue here, if Geagley opposes Tomo's motion to compel arbitration, Tomo will – upon securing an order in its favor – seek to recover its reasonable attorneys' fees, costs, and disbursements incurred in connection with this motion.

## IV.    ARGUMENT

### A.    <u>Legal Standard</u>

"The [Federal Arbitration Act "FAA"] provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' . . . and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. §§ 2 and 4). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Id.* (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (emphasis in original)).

The role of this Court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citations omitted). However, "[i]f the parties' contract delegates the question of arbitrability to an arbitrator, courts must defer to the parties' contract and respect that decision."

*Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097, 1106 (N.D. Cal. 2020) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). "The party seeking to compel arbitration must only show that a valid arbitration agreement exists, which delegates the arbitrability issue to an arbitrator." *Id.* (citing same). The party seeking to compel arbitration has the burden to prove, by a preponderance of the evidence, that an agreement to arbitrate exists. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Here, because Section 11.16 of the T & Cs delegates "interpretation or application of the Arbitration Provision, including enforceability, revocability, scope, or validity of the Arbitration Provision" exclusively to the arbitrator (Kim Decl., ¶ 15 and Ex. B, § 11.16), the Court need only decide whether a valid arbitration agreement exists. Upon making that finding, the Court must enter an order compelling arbitration.

### B.    The Court Must Compel Arbitration

#### 1.    The FAA Governs the Arbitration Agreement

The FAA undeniably governs this matter. As an initial matter, Section 11.5 of the T & Cs states that "[t]he [T & Cs] evidence[] a transaction involving interstate commerce" and thus, "the Federal Arbitration Act, 9 U.S.C. § 1 et seq., will govern the interpretation and enforcement of the Arbitration Agreement and any arbitration proceeding. (*Id.* ¶ 15 and Ex. B, § 11.5.); *see McGrath v. Doordash, Inc.*, No. 19-cv-05279-EMC, 2020 WL 6526129, at *5 (N.D. Cal. Nov. 5, 2020) ("the ICA expressly provides that the FAA governs the agreement"); *Ramirez v. LQ Mgmt., L.L.C.*, No. 2:19-cv-06507-ODW(JPRx), 2020 WL 2797285, at *2 n.3 (C.D. Cal. May 29, 2020) ("the Agreement expressly invokes the FAA"); *Martinez v. Leslie's Poolmart, Inc.*, No. 8:14-cv-01481-CAS (CWx), 2014 WL 5604974, at *3 n.4 (C.D. Cal. Nov. 3, 2014) ("the arbitration agreement expressly provides that it is governed by the FAA"). The FAA also applies because the T & Cs govern Geagley's use of TomoBoost and evidence a transaction involving commerce. Tomo is a Delaware entity headquartered in San Francisco, California (Kim Decl., ¶ 2) and Geagley is a resident of New York who signed up for, paid for, and used TomoBoost. (ECF No. 1 ¶¶ 4, 33, 44-46, 59); *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting "'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'

– words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power" and "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is, 'within the flow of interstate commerce'" (quoting *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995)).

Indeed, "the 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted). "[M]ore than three decades of Supreme Court precedent recogniz[es] the 'liberal federal policy favoring arbitration agreements,' as established by the [FAA]." *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 816 (9th Cir. 2016). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms" to facilitate streamlined proceedings . . . including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes,' . . . and 'the rules under which that arbitration will be conducted.'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citations omitted); *see also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 932 (9th Cir. 2013) (the FAA "reflects an 'emphatic federal policy' in favor of arbitration" (quoting *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012)); *see also Wu v. Uber Techs., Inc.*, 260 N.E.3d 1060, 1068 (N.Y. Ct. App. 2024) (New York has a "long and strong public policy of favoring arbitration" and "New York courts interfere as little as possible with the freedom of consenting parties' to submit disputes to arbitration" (internal citations omitted)).

### 2. The T & Cs Constitute a Valid and Enforceable Agreement

The T & Cs (containing the arbitration provision) are undeniably a valid agreement. "When determining whether a valid contract to arbitrate exists, [courts in the Ninth Circuit] apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Here, whether New York law (where Geagley resides) or California law (where Tomo is headquartered) applies, the analysis is the same. The Ninth Circuit has already found that "'New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)). Thus, the Court need not engage in a choice of law analysis "because both California and New York law

8

dictate the same outcome." *Id.* (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)).

"To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement." *Id.* (citing *Nguyen*, 763 F.3d at 1175 (applying New York law); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)). Under both New York and California law, the mutual asset or intent to contract is governed by an objective rather than subjective standard. *See Wu*, 260 N.E.3d 1060, 1069 (NY 2024) ("in determining whether the parties possessed the necessary intention to contract, an objective test is generally to be applied. That means, simply, that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling" (internal citations omitted)); *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 943 (2022) ("[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings").

"Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Berman*, 30 F.4th at 855.  That said, "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* (internal citations omitted). Importantly, "[t]hese elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 855-856. Indeed, "[b]ecause contract formation is governed by an objective rather than a subjective standard, there is no requirement that a party have correctly understood— or even reviewed—the terms presented by the offeror for their manifestation of acceptance to be effective. Instead, courts ask whether the offeree was put on inquiry notice of the contractual terms." *Wu*, 260 N.E.3d at 1070.

In the case of an online contract, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which

9

the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856; *see Specht*, 306 F.3d at 35 ("[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility"). As the Ninth Circuit has observed, "[t]he most straightforward application of these principles in the online world involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman*, 30 F.4th at 856. "In that scenario, the consumer has received notice of the terms being offered and . . . 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms." *Id.* "As a result, courts have routinely found clickwrap agreements enforceable." *Id.*; *see*, *e.g.*, *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. EDCV161953DMGKKX, 2020 WL 6528422, at *3 (C.D. Cal. Oct. 20, 2020) ("[s]o long as the user has access to the terms and conditions, 'even if the terms are not presented on the same page as the acceptance button,' clickwrap agreements have been consistently upheld by the courts and used to compel arbitration" (quoting *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011)). Indeed, New York courts have found that:

> when terms are linked on an uncluttered interface and temporally and spatially coupled with the mechanism for manifesting assent, and the user does not need to scroll beyond what is immediately visible to find the terms, [courts] have concluded, *as a matter of law*, that the interface provided reasonably conspicuous notice of the existence of contractual terms

*Wu*, 260 N.E.3d at 1073 (internal citations omitted) (emphasis added). "Although an Internet or smartphone user need not explicitly say 'I agree' to the contractual terms, they must engage in conduct that a reasonably prudent user would understand to constitute assent." *Id.*

Here, Tomo provided reasonably conspicuous notice of the T & Cs and Geagley affirmatively checked the Confirmation Box that unambiguously manifested his assent to the T & Cs, including the arbitration provision and class-action waiver. The hyperlinked "terms and conditions" text, which was displayed in italics and turned blue upon hovering over the phrase, was

10

located in the same line as, and immediately adjacent to, the Certification Box that Geagley was *required* to check to confirm that he had read the T & Cs. (Kim Decl., ¶ 8.) Indeed, Geagley could not submit his TomoBoost application without checking the Certification Box. (*Id.* ¶ 10.) Geagley was free to review the T & Cs for as long as he desired prior to checking the Certification Box. (*Id.* ¶ 9.)

Specific to the arbitration provision, Geagley was immediately put on notice of its existence on the first page of the T & Cs in bold, capitalized letters, which language referred Geagley to Section 11 of the T & Cs for the full arbitration and dispute resolution provision. (*Id.* ¶ 15 and Ex. B, p. 1). After applying for TomoBoost, Geagley provided his telephone number, birthday, and social security number, and logged into his TomoBoost account no fewer than eight times in October 2025, including to change his method of payment (swapping in an inactive payment card). (*Id.* ¶ 13.) The T & Cs also expressly allow Geagley to opt out of the arbitration provision within thirty (30) days of electronically accepting the T & Cs, which he chose not to do. (*Id.* ¶¶ 15 and 16 and Ex. B, § 11.13.) Geagley's assent to the T & Cs when signing up for TomoBoost and his failure to opt out of the arbitration provision lead to the inexorable conclusion that he is bound by the T & Cs, including the arbitration provision and the class-action waiver.

### 3. The T & Cs Clearly and Unmistakably Delegated Questions of Arbitrability to the Arbitrator

Finally, the delegation clause in the arbitration provision clearly and unmistakably delegates all questions of arbitrability exclusively to the arbitrator, thereby leaving the Court powerless to decide whether Geagley's claims are encompassed by the arbitration provision, or to adjudicate any challenges to the validity or enforceability of the arbitration provision.

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc.*, 586 U.S. at 68; *see Abdel-Latif v. Brookdale Emp. Servs., LLC*, No. 23-CV-06372-BLF, 2024 WL 2112869, at *3 (N.D. Cal. May 9, 2024) (citing same and granting motion

11

to compel arbitration without deciding any challenge to enforceability of the arbitration provision because the court was powerless to do so under the delegation provision). Here, Section 11.16 of the T & Cs states that "[t]he arbitrator shall have ***exclusive authority*** to resolve any Dispute, including, without limitation, disputes arising out of or related to interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement." (Kim Decl., ¶ 15 and Ex. B, § 11.16 (emphasis added).)

Further, Section 11 of the T & Cs expressly states that the "arbitration will be administered by the American Arbitration Association ("AAA"), in accordance with the Consumer Arbitration Rules" then in effect. . . ." (*Id.* Ex. B, § 11.5.) Courts have routinely found that incorporation of the AAA rules constitutes clear and unmistakable evidence of delegation. *See*, *e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); *Brennan*, 796 F.3d at 1130 ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Acosta v. Brave Quest Corp.,* 733 F. Supp. 3d 920, 929 (C.D. Cal. 2024) (incorporation of AAA rules establishes that "the parties have manifested their mutual intent to arbitrate gateway issues"); *McDougall v. Samsung Elecs. Am., Inc.*, No. 23 CIV. 168 (LGS), 2023 WL 6445838, at \*7 (S.D.N.Y. Oct. 3, 2023) ("[t]he breadth of [delegation provision] and its incorporation of the AAA Rules, which themselves provide the arbitrator with authority to decide issues of scope and applicability, provide clear and unmistakable evidence of the parties' intent to arbitrate arbitrability"); *Gountoumas v. Giaran*, No. CV 18-7720-JFW (PJWx), 2018 WL 6930761, at \*6 (C.D. Cal. Nov. 21, 2018) (adopting "majority view" that "incorporation of AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability, even if one or more of the parties are unsophisticated"). Accordingly, all questions relating to the interpretation and application of the arbitration provision fall squarely within the exclusive authority of the arbitrator and the Court has no power to decide such issues.

### C.     This Action Must Be Stayed Pending the Arbitration

Under the FAA, "the [C]ourt . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . *shall* on application of one of the parties stay the trial of

12

the action until such arbitration has been had in accordance with the terms of the agreement. . ." 9 U.S.C. § 3 (emphasis added). Under this provision, a "federal case must be stayed while the parties proceed to arbitration." *Kilgore v. KeyBank, Nat'l Ass'n.*, 673 F.3d 947, 955 (9th Cir. 2012), *reversed and remanded on other grounds*, 718 F.3d 1052 (9th Cir. 2013); *see also Smith v. Spizzirri*, 601 U.S. 472, 474 (2024) ("[t]he question here is whether [9 U.S.C.] § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration. It does not."). Here, Tomo requests that the Court stay this action pending completion of arbitration.

**V.      CONCLUSION**

For the reasons stated above, the Court should grant Tomo's motion to compel Geagley's claims, both individually and as a putative class, to arbitration consistent with the terms of the T & Cs and stay this action pending conclusion of the arbitration.

Dated: June 2, 2026                                 NIXON PEABODY LLP


                                                    By:   */s/ Gina M. McCreadie*
                                                          Seara Sullivan
                                                          Jason C. Kravitz (admitted *pro hac vice*)
                                                          Gina M. McCreadie (admitted *pro hac vice*)
                                                          Attorneys for Defendant
                                                          TOMOCREDIT INC.

13